## STATE OF MISSOURI

AT THE

### APRIL TERM, 1925.

---

(*Continued from Vol.* 310.)

---

THE STATE ex rel. INTERNATIONAL SHOE COMPANY v. OLIVER CHAPMAN, License Collector of City of St. Louis, ROBERT WYCOFF, JR., EDWIN NOLTE and EDWARD E. BUTLER, Members of Merchants' and Manufacturers' Board of Tax Equalization.

Division One, October 9, 1925.

1. **LICENSE TAX: Manufacturer: Purchase and Sale of Own Article: Ordinance.** Relator, a manufacturer of shoes, was granted by the city a manufacturer's license to manufacture shoes in the city. The ordinance defined a manufacturer as any person "who shall hold or purchase personal property for the purpose of adding to the value thereof, by any process of manufacturing, refining, or by the combination of different materials, or shall purchase and sell manufactured articles such as he manufactures or uses in manufactur-

(1)

ing." *Held*, that relator did not "purchase" those shoes which were manufactured in its own factories in other cities and brought to its warehouse in the city and from there shipped to places outside the State, nor were such shoes such articles as he "uses in manufacturing." Shoes manufactured in factories located outside the city were not manufactured under the privilege granted by the city, but necessarily were manufactured under a privilege elsewhere granted, and do not come within the terms of the ordinance, and relator is not taxable upon them by the city as a manufacturer.

2. ————: ————: **Enlargement of Statutory Definition: Constitutional Inhibition.** The city of St. Louis cannot by ordinance enlarge the definition of "manufacturer" to include persons not embraced in the statute. It cannot, for the purposes of taxation, define a manufacturer to be any person who "shall purchase and sell manufactured articles such as he manufactures or uses in manufacturing" where such person is not embraced in the statutory definition. In such case the constitutional provision (Secs. 22, 23, Art. 9) declaring that the charter of said city and all amendments thereof "shall be in harmony with and subject to the Constitution and laws of this State" applies, as does the statute (Sec. 8704, R. S. 1919) requiring every municipality to "confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law" upon the subject of manufacturer.

3. ————: ————: **Sales of Shoes Manufactured in Other States.** Relator, a manufacturer of shoes, operates forty-three factories, seven of which are located in the city of St. Louis, seventeen in other towns and cities in Missouri, and nineteen in towns in other states. When the shoes are finished at the factories, each pair is placed in a paper box, and a dozen boxes in a case, and shipped to relator's warehouse in St. Louis, and from there they are shipped or delivered, on orders, to merchants in the city, or to customers in other cities, the great bulk going to merchants in other states. In some instances the shoes are sold and delivered in unbroken crates, or dozen lots, without being removed from the crate or box in which they were packed at the factory, and in other instances the cases containing a dozen pairs are broken and parts of two or more cases are assorted to meet the specifications of a particular order. *Held*, that relator, as a manufacturer, is taxable by the city upon the value of all shoes made in its factories located in the city, regardless of where they are sold, but no shoes which were not manufactured in the city come within the range of the valid

terms of the ordinance, and therefore the city is not entitled to exact a tax upon the value of shoes manufactured elsewhere.

Corpus Juris-Cyc. References: Commerce, 12 C. J., Section 141 p. 103, n. 69, 70. Licenses, 37 C. J., Section 73, p. 218, n. 66. Manufacturers, 38 C. J., Section 10, p. 968, n. 18 New. Municipal Corporations, 28 Cyc., p. 273, n. 91; p. 701, n. 11.

## *Certiorari.*

ORDER OF ASSESSMENT QUASHED.

*Frank Y. Gladney* and *R. E. Blake* for relator.

(1) *Certiorari* is a proper method for reviewing and determining the legality of the assessment. State ex rel. v. Stephens, 146 Mo. 662; Western Union v. Seay, 132 U. S. 472. (2) The sales against which the protested part of the assessment was made are transactions in interstate commerce. Butler Bros. Shoe Co. v. Rubber Co., 156 Fed. 1; Swift & Co. v. United States, 196 U. S. 398; Text Book Co. v. Pigg, 217 U. S. 107; Kansas City v. McDonald, 175 S. W. 917; Pennsylvania Railroad Co. v. Clark Bros., 238 U. S. 466; Norfolk & Western Railroad Co. v. Sims, 191 U. S. 441; Addyston Pipe Co. v. United States, 175 U. S. 246. (3) The ordinance has no extra-territorial effect and the court will presume that it is confined to domestic commerce and does not embrace interstate commerce. Stanley v. Wabash Railroad, 100 Mo. 435; Connell v. W. U. Tel. Co., 108 Mo. 459; State v. Gritzner, 134 Mo. 512. (4) If the ordinance is susceptible of two constructions, one of which includes receipts derived from interstate transactions and the other excludes such receipts, the court by an elementary rule of construction will adopt the latter view. Lumber Co. v. Railroad, 216 Mo. 671; Dorrance v. Dorrance, 242 Mo. 652; State v. Tax Comm., 221 S. W. 724; Stack v. General Baking Co., 223 S. W. 93. (5) The ordinance cannot be held to embrace transactions in interstate commerce without doing violence to most elementary principles.

Standard Oil Case, 218 Mo. 376; Kansas City v. Mc-
Donald, 175 S. W. 917; Crutcher v. Kentucky, 141 U. S.
47; Vance v. Vandercrook, 170 U. S. 438; Tel. Co. v.
Pennsylvania, 190 U. S. 160; West v. Kansas Gas Co.,
221 U. S. 260.

*Oliver Senti* and *Daniel Bartlett* for respondents.

(1)   The manufacturers' license tax is a tax, not
upon property or upon sales, but is levied upon the privi-
lege of doing a manufacturing business.   Am. Mfg. Co.
v. St. Louis, 270 Mo. 40, 250 U. S. 459, 63 L. Ed. 1084.
(2)   The receipt by relator of shoes produced in its
factories situated outside of St. Louis, the unpacking
and commingling of such shoes with shoes produced in
its local factories, the assorting of all shoes as to size
and variety regardless of place of origin and subsequent
sale of such lots of shoes, constitute part of the "priv-
ilege" of doing a manufacturing business as that busi-
ness is defined in the ordinance licensing that privilege.
St. Louis Revised Code 1914, sec. 396.   (3)   A munici-
pal license tax upon the privilege of conducting a manu-
facturing business in the city is not an unconstitutional
regulation of interstate commerce merely because the
amount of tax is measured by the amount of goods sold
by the manufacturer under such license, whether such
goods are sold within or without the State, either in do-
mestic or interstate commerce.   Am. Mfg. Co. v. St.
Louis, 250 U. S. 459, 63 L. Ed. 1084.

LINDSAY, C.—This is a proceeding under writ of
*certiorari,* issued out of this court, whereby the relator
seeks to set aside and annul in part the order of assess-
ment of taxes made by respondents as members of the
Merchants' and Manufacturers' Board of Equalization
of the city of St. Louis, upon relator's license as a manu-
facturer.

The relator is a Delaware corporation, licensed to
do business in this State, having its offices and principal

place of business in the city of St. Louis, and is engaged in the manufacture and sale of shoes. Relator operates 43 factories, seven of which are located in the city of St. Louis, seventeen in other cities and towns in the State of Missouri, and nineteen in cities and towns in other states.

Under an ordinance of the city of St. Louis there is levied, in addition to other taxes, a license tax upon manufacturers of one dollar per $1000, of the value of their finished products. The amount of the tax is computed upon the sales price of the finished products. The sole issue made here is the validity of the tax levied against relator upon its license as a manufacturer, on account of shoes manufactured by it outside of the city of St. Louis, and sold and delivered to customers in other states. The amount in dispute is the sum of $76,871. Upon the issue here, and upon the question of the validity of the assessment of said sum of $76,871 by said board, there is and was no dispute as to the facts.

From the stipulated return we take the following, which sets forth the manner in which relator's business is conducted, and the values of its products in the year for which the tax was levied:

"While the petitioner produces a large variety of shoes for men, women and children, a given one of its aforesaid factories produces only one or at most a few varieties. When the shoes are finished at the various factories, they are dealt with thus: Each pair is placed in a pasteboard box or carton, on which is printed the name or brand of the shoe, together with the size and stock number. A dozen pairs are then packed in wooden or paper crates or cartons, and shipped to petitioner's warehouses located in the city of St. Louis. From such warehouses the shoes are shipped and delivered to customers on orders procured by petitioner, in some instances before the shoes are manufactured, and in others after they are manufactured. Again in some instances the shoes are sold and delivered in unbroken cases, or dozen lots, without being removed from the crate or box in which they were packed at the factory. But in other

instances (and perhaps in most) the cases containing a dozen pairs are broken and parts of two or more cases are assorted to meet the specification of a particular order. When the assortment has been made, the shoes selected are re-packed and forwarded to the customer by parcel's post, by express or by freight.

"Petitioner solicits and obtains orders by three agencies: (1) by traveling salesmen or drummers who go to the customer's place of business and there procure written orders which are signed by the customer and forwarded to petitioner's main office in St. Louis; (2) by printed catalogues and circulars sent to customers through the mails; and (3) by the personal presence of the customer's representative at the office and sample room of petitioner in the city of St. Louis. The great bulk of petitioner's orders is procured through the solicitation of its traveling salesmen or drummers, who, periodically each season, call upon customers at the latter's places of business.

"All orders, regardless of how the particular transaction is initiated, are by express terms made subject to approval by the petitioner at its main office in St. Louis, and no order is binding upon the petitioner until so approved and accepted.

"Bills for shoes sold by petitioner are payable in St. Louis, and the proceeds are deposited there, where the books and records of the petitioner are kept.

"Under the foregoing method of doing business the petitioner during the tax year (that is to say, from June 1, 1923, to May 31, 1924) manufactured in its factories located in the city of St. Louis shoes of the value (and which were sold for the amount) of $12,749,541.77, and during the same period it sold to customers in the State of Missouri shoes in the amount and value of $5,678,226.-98. During the same period it manufactured in its factories located outside of the city of St. Louis shoes in the amount and value of $76,870,630, which it sold and shipped from its place of business in St. Louis to customers in states other than Missouri. These facts appear

from entries in petitioner's books and records. They have been verified by the said License Collector and are not disputed."

Under the foregoing, the relator expressed and here expresses its willingness to pay the sum of $18,428, being one dollar per thousand on $18,427,768.75, which is the entire value of (a) all shoes made during the year in its factories located in the city of St. Louis, regardless of where said shoes were sold, and of (b) all shoes sold by petitioner during the year in the State of Missouri, regardless of where such shoes were manufactured by it. The proceedings had before the board included the fixing of relator's *ad valorem* tax upon its raw materials, finished products, tools, machinery and appliances, but none of these matters was, or is now, the subject of dispute.

The contention of relator was and is that in respect of shoes manufactured by it in states other than Missouri, and sold and delivered by it to customers in other states, it was engaged in interstate commerce, which constituted a right or privilege not subject to taxation under said ordinance. The view of the Board of Equalization was that the sales made in the manner aforesaid, through traveling salesmen and otherwise, constituted local sales within the meaning and intent of the ordinance of the city, and were properly included in the computation of the total sales made by relator, as a manufacturer, for the ascertainment of its license tax.

In undertaking to reach the ultimate conclusion in this case it seems more convenient to consider first, and chiefly, the grounds of the defense of respondents. That defense is attacked in the reply brief for relator. It is founded upon the ruling made in American Mfg. Co. v. St. Louis, 270 Mo. 40, and the ruling of the Supreme Court of the United States in American Mfg. Co. v. St. Louis, 250 U. S. 459, and next, upon the ordinance of the city, defining the term "manufacturer," followed with the contention that the question of interstate commerce is not

involved, nor relevant under the facts of this case. These matters we consider in the order named.

In the case of the American Mfg. Co., 270 Mo. 40, the tax involved was the manufacturer's license tax of that company, and the suit was to recover an alleged excess of tax, paid by it to the city. In that case the goods manufactured by the plaintiff, and forming the basis of the issue, were manufactured in St. Louis, under its license as a manufacturer, obtained from that city. The tax claimed by the city was one measured by the amount of sales of the company's products, wherever they might be sold, or a tax upon the privilege of manufacturing, graduated according to the extent to which the company availed itself, of that privilege. In that case, goods, all made in St. Louis, were in part stored there, and in part removed to and stored in warehouses in other states. Thence, from either of these, orders were filled. The case in its application to the business conducted by this relator, involved sales, made through the St. Louis office of the company, of goods, made in St. Louis, but shipped from points other than St. Louis, to states other than Missouri; and also included the claim that substantially all the sales were effected only through the home office in New York, or, through being confirmed by the home office in New York.

The claim of the company there, was, that its liability was measured by the sales of products not only manufactured in St. Louis, but also sold in St. Louis, and that the amount of its tax could not be enlarged by taking into consideration the amount of sales of its products, though made in St. Louis, where the sales were not made in St. Louis, or were made out of the State of Missouri. That claim was denied.

The ruling made is as follows, l. c. 46: "We hold that the tax in question is a tax upon the privilege of pursuing the business of manufacturing these goods in the city of St. Louis; that when the goods were manufactured the obligation accrued to pay the amount of the tax represented by their production when it should be liquidated by their sale by the manufacturer; that their re-

moval from the city of St. Louis and storage elsewhere, whether within or without the State, worked no change in this obligation; that their sale by the respondent wherever they may have been stored at the time, whether it was done through its home office in New York or the office of its factory in St. Louis, should have been reported in its return to the license collector of the city of St. Louis and the amount included in fixing the amount payable on account of its license tax."

In error to the Supreme Court of the United States, that court said, 250 U. S. 463: "No tax has been or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold." Such a tax was sustained. That ruling, the relator concedes, is applicable and authoritative in respect to a tax measured by the value of all shoes manufactured in St. Louis, without regard to where such shoes were sold. Upon that point there is no dispute; but, as to the tax arising through sales of shoes manufactured in other states and sold to customers in other states, although first brought to relator's warehouses in St. Louis, the ruling in the American Manufacturing Company Case has no application, unless it be granted that, as to such shoes, the relator is a manufacturer of them in St. Louis under the terms of its license from that city, and by force of the ordinance of that city, and by virtue of its manner of transacting its business.

It is to be kept in mind that the license here under consideration is not a merchant's license, but is a manufacturer's license, granting the right to manufacture shoes in the city of St. Louis and to sell them. The tax is a tax upon a privilege exercised under authority of the city. The amount of the tax is measured, first, by the extent of the exercise of the right granted, and further, by the extent of the authority of the city itself to levy such tax.

The term "manufacturer" is thus defined by the ordinance of the city (R. C. sec. 396):

"Sec. 396. *Manufacturer defined.*—Every person, firm or corporation, who shall hold or purchase personal property for the purpose of adding to the value thereof, by any process of manufacturing, refining, or by the combination of different materials, or shall purchase and sell manufactured articles such as he manufactures or uses in manufacturing, shall be held to be a manufacturer for the purposes of this article, except as is or may be otherwise provided by ordinance."

The definition given in the statute, Section 13103, Revised Statutes 1919, is as follows: " *'Manufacturer' defined.*—Every person, company or corporation who shall hold or purchase personal property for the purpose of adding to the value thereof by any process of manufacturing, refining, or by the combination of different materials, shall be held to be a manufacturer for the purpose of the foregoing section." The section referred to is the general provision for the taxation of manufacturers.

It is thus seen that the definition given by the ordinance extends the meaning of the word "manufacturer," by making it include any person who "shall purchase and sell manufactured articles such as he manufactures or uses in manufacturing."

It cannot be said under the facts in this record that the relator purchases those shoes which it is conceded are in fact manufactured by it, in its factories in cities other than St. Louis. We can see nothing here of the nature of fact to bring the relator within this element of the definition which is thus inserted in the ordinance. Relator could not be held to be a purchaser of its own shoes, by physical transfer of them from one of its factories in another state to a warehouse in St. Louis; nor, was such transfer, and the mingling of some of said shoes with others made in St. Louis or elsewhere, for the purpose of filling the order of a customer, a "use in manufacturing." Such shoes were not in fact manufactured by relator under the privilege granted by the

city of St. Louis, but necessarily were manufactured under a privilege elsewhere granted.

By action of counsel, and their consent through statements in their briefs, there have been added to the agreed record three sections of the Revised Code 1914, of the city.  Of those, Section 400 prescribes the form of the license to be issued to the manufacturer.  The form prescribed runs that the licensee having paid the amount of his license tax as a manufacturer, is ''authorized to manufacture the following articles  . . .  except as otherwise provided by ordinance at any one place in the city for the year  . . . . and to sell and dispose of such articles so manufactured, at the same place, or any other place in the city.''

Of the two other sections so added, Section 407 defines the term ''merchants,'' and Section 408 sets forth the requirement that every person falling within the provision of Section 407, must procure a license as a merchant.  These sections are referred to, because attention has been called to them, but it is clear that Section 400 does not undertake to enlarge the scope of the statutory definition of ''manufacturer,'' and it could not do so.

Respondents in arguing that the transfer of shoes by relator from its factories in other states, to its warehouse in St. Louis, constituted, in effect, the purchase of them within the terms of the ordinance, cite, as presenting a somewhat similar situation, the case of Simmons Hardware Co. v. St. Louis, 192 S. W. 394.  That was a suit to recover certain sums, which the plaintiff claimed it had paid in procuring its merchants' license, in excess of what it was required to pay under the law.  There were several items in dispute, but the one pertinent to the immediate question here, was the tax computed under the license upon the value of goods sold or transferred, and delivered by the plaintiff, from its place of business in St. Louis, to certain subsidiary corporations in other states.  It was held in that case that these transactions were sales for the purposes contem-

plated in imposing the license. Those subsidiary corporations were organized by plaintiff, or its stockholders, for convenience, and as a policy, in the transaction of its business. Of these corporations it was said at page 397: "They were all distinct and separate entities, either of which might independently prosper and survive the others." These transfers, it was said, were attended by the usual formalities of a sale. It was held that having voluntarily adopted that method of transacting business, it did not lie in the mouth of the plaintiff to say that it meant something else than the character which the plaintiff had given it. The case is without application, or any close similarity to the instant case upon the points here under consideration.

Aside from the question of fact there is the question of the power of the city, for the purpose of taxation, to enlarge the definition of "manufacturer" as that term is defined by the general law of the State. Under the provisions of Sections 22 and 23 of Article IX of the Constitution, it is required that the charter of the city of St. Louis and all amendments thereto "shall be in harmony with and subject to the Constitution and laws of the State." In addition to this and to the general law defining "manufacturer," there is the further express statutory provision, Section 8704, Revised Statutes 1919: "Any municipal corporation in this State, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the State, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the state law upon the same subject." In St. Louis v. Meyer, 185 Mo. 583, it was held that the city could not, by ordinance, enlarge the definition of "peddler." In general, it has been held that while a city is not compelled to exercise all the powers conferred upon it by law, yet it may not in matters of state-wide concern, enlarge the powers conferred, nor

exercise a power beyond the limits prescribed by the general law on the same subject. [St. Louis v. Williams, 235 Mo. 503; St. Louis v. Klausmeier, 213 Mo. 119; Trenton v. Clayton, 50 Mo. App. 535; Moberly v. Hoover, 93 Mo. App. 663.]

The validity of the tax in dispute assessed by respondents to the amount of $76,871, is asserted as the tax upon relator in its character of manufacturer, and as within the terms of the ordinance—a tax upon the privilege enjoyed under the terms of the ordinance. We hold that in respect of the shoes involved in the foregoing amount, relator is not in fact within the terms of the ordinance itself. This, aside from any question as to the power of the city to extend or enlarge the definition of what constitutes a manufacturer. These shoes were not purchased within the meaning of the interpolation in the definition. Further, as to these shoes, the process of manufacture was completed in relator's factories in other states. The act of selecting certain of those shoes after they were stored in St. Louis, along with other shoes also stored there made in St. Louis, or elsewhere in this State, for the purpose of suiting the requirements of a customer, is not an act of manufacturing, but an act related to commerce—to the sale of the shoes. It is conceded that the sale of shoes entering into the issue, and amount in dispute, constituted interstate commerce. But, we do not think the interstate character of those sales entered into or forms any necessary factor in the issue here to be determined. If those shoes were manufactured in St. Louis within the authorized meaning of the ordinance of the city, the fact that they were sold in other states offers no obstacle to their consideration in computing the manufacturer's tax. If they were not in the range and meaning of things manufactured in St. Louis, under the authorized meaning of the ordinance, they were out of consideration in computing the tax as a tax on the privilege of manufacturing. No question of the right of the city to re-

quire a merchants' license of relator in respect of the sale of these shoes, or question of the power to assess a tax under that relation, is involved here.

We hold for the purpose of levying a tax on the relator's privilege as a manufacturer, the ordinance did not authorize a computation of the tax upon the value of shoes manufactured beyond the jurisdiction of the city. The protest of relator, however, and its action here, goes only to the tax computed upon shoes made out of the city and sold out of the State, and as to that tax, levied against relator in its character as manufacturer, we hold it was unauthorized, and to that extent the record of the Merchants' and Manufacturers' Board of Tax Equalization is quashed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. *Ragland, P. J., Graves* and *Atwood, JJ.,* concur; *Woodson, J.,* absent.