THE STATE EX REL. INTERNATIONAL SHOE COMPANY v. OLIVER CHAPMAN, as License Collector of City of St. Louis.—300 S. W. 1076.

Court en Banc, October 10, 1927.

100

*Frank Y. Gladney* and *R. E. Blake* for relator.

102

*Julius T. Muench* and *Oliver Senti* for respondent; *Eugene C. Slevin* of counsel.

BLAIR, J.—This is an original proceeding in *certiorari*, whereby relator seeks to quash the record of the Board of Merchants' and Manufacturers' Tax Equalization of the city of St. Louis, made on July 27, 1926, in the matter of the assessment of merchants' license taxes against relator for year ending July 1, 1926. Said board having adjourned soon after its entry, the record here challenged is now in the custody and under the control of respondent in his official capacity as license collector.

The facts, together with applicable provisions of the city charter and ordinances, have been fully stipulated. Respondent is license collector of the city of St. Louis. The Board of Merchants' and Manufacturers' Tax Equalization, to which we will refer as "board," meets on the third Tuesday of June each year and continues in existence for a six weeks' session, if so required, but not longer. Among other duties, the board "shall determine all matters of appeal, equalization, revision or correction of assessment or of any other matter properly coming before said board." [Rev. Code 1914, sec. 335.]

By Section 407 of said Revised Code, the word "merchant" is thus defined: "Whoever shall deal in the selling of any goods, wares or

merchandise at any store, stand or place occupied for that purpose within the city, or at the Merchants' Exchange, is hereby declared to be a merchant, except as is or may be otherwise provided by ordinance.''

By Section 408, every person defined to be a merchant by Section 407 is required to take out a license. Section 410 provides for a statement of the largest amount of merchandise the merchant had on hand between the first Monday in March and the first Monday in June of each year and, ''second, a statement of the aggregate amount of all sales made by him during the year next preceding the first Monday of June, which statement shall be made in writing,'' etc.

Section 411, after providing for the levy and collection of an *ad valorem* tax for municipal purposes on the goods, wares and merchandise of said merchant ''situated within the limits of the city,'' provides for a license fee ''which shall be paid every year by the merchant, mercantile firm or corporation (in addition to the per centum hereinbefore stated) of one dollar on each one thousand dollars or fractional part thereof, of sales made by such merchant, mercantile firm or corporation,'' etc.

That the fee for such license is based on *all* sales of the merchant and not merely those made in Missouri is further shown by Section 415 of the Revised Code, which requires the merchants ''to keep a proper book and enter in ink an account of all sales made by him or them, which account shall always be open to the inspection of the License Collector to verify the returns made by him.''

Relator is a manufacturer of shoes and a merchant of the product of its factories. It paid the Manufacturers' License Tax required by Section 397 and the *ad valorem* tax due the city on its merchandise, etc., required by Section 411. In July, 1926, relator made application to respondent for a merchant's license and filed therewith its verified return, showing, among other things not now important, that the entire value of all shoes made by relator in the city of St. Louis for the preceding year was the sum of $11,228,193.88, regardless of where such shoes were sold. It was also stated in said return that the entire value of all shoes sold by relator to customers in Missouri, regardless of where such shoes were made, was $6,210,315.23.

On July 12, 1926, the board examined said return and found it to be insufficient and made an order increasing the sales item from $6,210,315.23 to $86,139,744.54. The latter figure represents the total sales of relator within and without the State of Missouri. On July 22, 1926, relator filed a written protest with the board and the same was overruled on July 27, 1926. In entering its order disal-

lowing said protest and after referring to relator's contention that the tax should not be imposed upon sales made outside of Missouri, the board said:

"But the board is advised that the license tax exacted of merchants by law and ordinance of the city of St. Louis of one dollar per thousand upon the aggregate amount of all sales made by the merchant during the prior year is not a tax upon such sales specifically as such, but is a tax upon the privilege of pursuing the business of merchant in the city of St. Louis, under the protection of the laws of the State and the ordinances of the city, and that reference is had to such sales only for the purpose of graduating the license tax to the value of this privilege and to the extent of its exercise. It is accordingly, in the judgment of the board, immaterial to inquire whether any part of such sales constituted interstate commerce."

Relator contends that it is entitled to a license as a merchant upon paying the sum of $6,210.32, which amount it has tendered and which respondent refused to accept. Respondent contends that relator is not entitled to such merchant's license until it has paid the sum of $86,139.75, or $79,929.43 more than relator has tendered. Otherwise stated, relator contends that it is entitled to a merchant's license upon paying one dollar per thousand upon sales made in Missouri. Respondent contends relator is not entitled to such license until it tenders and pays one dollar per thousand upon its total sales, regardless of where such sales were made. If relator is correct in its contention, the order of the board, in so far as it fixed the amount of relator's sales in excess of $6,210,315.23, as a basis for relator's license tax as a merchant, is and was illegal and unauthorized and its record to that extent should be quashed. If respondent is correct in his contention, our writ of *certiorari* was improvidently issued and should be quashed.

Relator is a corporation organized under the laws of the State of Delaware. Its offices and principal place of business are in St. Louis. It owns and usually operates forty-three factories for the manufacture of shoes. Twenty-four of these factories are located in St. Louis and other cities of Missouri. Nineteen of such factories are located in Illinois, Iowa, Kentucky and New Hampshire. The total daily capacity of its factories is approximately one hundred and fifty thousand pairs of shoes.

Relator contends that the imposition of a merchant's license tax, based upon all of its sales, is a burden upon interstate commerce, in so far as such tax is based upon sales made in other states and foreign countries, and to that extent is illegal. On the other hand, re-

spondent contends, as the board wrote into its order overruling relator's protest, that the imposition of a merchant's license tax of one dollar per thousand, based upon all sales intrastate and interstate, is not a tax upon such sales as such, but is a tax upon the privilege of pursuing the business of a merchant in the city of St. Louis and that the reference to sales is only made to graduate and determine the value of such privilege in view of the extent of its exercise.

In State ex rel. International Shoe Company v. Chapman, 311 Mo. 1, 276 S. W. 32, Division One of this court had before. it the question of the power of the city of St. Louis to base the license tax of relator as 'a manufacturer upon shoes manufactured outside of Missouri and brought to St. Louis for storage, sale and distribution. It was there said that "for the purpose of levying a tax on the relator's privilege as a manufacturer, the ordinance did not authorize a computation of the tax upon the value of shoes manufactured beyond the jurisdiction of the city. The protest of relator, however, and its action here, goes only to the tax computed upon shoes made out of the city and sold out of the State, and as to that tax, levied against relator in its character as manufacturer, we hold it was unauthor-- ized.''

The question of whether or not the imposition of the manufacturer's license tax, based upon the value of shoes which were afterward the subject of interstate commerce, constituted an interference with or a burden upon interstate commerce was not regarded in that case as having any bearing upon the question there under consideration. It was said: "But, we do not think the interstate character of those sales entered into or forms any necessary factor in the issue here to be determined. If those shoes were manufactured in St. Louis within the authorized meaning of the ordinance of the city, the fact that they were sold in other states offers no obstacle to their consideration in computing the manufacturer's tax.'' This was in harmony with what we ruled in the American Manufacturing Company v. St. Louis, 270 Mo. 40, 192 S. W. 402.

In the case at bar we have squarely presented the question of whether or not the imposition upon relator of a license tax as a merchant is an improper interference with or undue burden upon interstate and foreign commerce, in violation of the Commerce Clause of the Federal Constitution, in so far as the said tax is based upon sales made in interstate and foreign commerce. We are convinced that a tax so imposed is illegal and void.

That the sales of shoes by relator outside of Missouri constitute interstate or foreign commerce, as the case may be, is admitted. Our

conclusion that the tax in question constitutes a burden upon, and amounts to an attempt to regulate, interstate commerce is so plainly required by the case of Crew Levick Company v. Pennsylvania, 245 U. S. 292, that we are justified in quoting rather extensively therefrom, as follows:

"The State of Pennsylvania, by an Act of May 2, 1899, P. L., p. 184, imposes an annual mercantile license tax of three dollars upon each wholesale vender of or dealer in goods, wares, and merchandise, and 'one-half mill additional on each dollar of the whole volume, gross, of business transacted annually,' and like taxes at another rate upon retail venders, and at still another upon venders at an exchange or board of trade. In the year 1913 plaintiff in error sold and delivered at wholesale, from a warehouse located in that State, merchandise to the value of about $47,000 to purchasers within the State, and merchandise to the value of about $430,000 to customers in foreign countries: the latter sales usually having been negotiated by agents abroad who took orders and transmitted them to plaintiff in error at its office in the State of Pennsylvania, subject to its approval, while in some cases orders were sent direct by the customers in foreign countries to plaintiff in error; and the goods thus ordered, upon the acceptance of the orders, having been shipped direct by plaintiff in error from its warehouse in Pennsylvania to its customers in the foreign countries. Under the Act of 1899 a mercantile license tax was imposed upon plaintiff in error, based upon the amount of its gross annual receipts. Plaintiff in error protested against the assessment of so much of the tax as was based upon the gross receipts from merchandise shipped to foreign countries. The Court of Common Pleas of Philadelphia and, upon appeal, the Supreme Court of the State (256 Pa. St. 508) sustained the tax, overruling the contention that it amounted to a regulation of foreign commerce and also was an impost or duty on exports levied without the consent of Congress, contrary to Sections 8 and 10 of Article I of the Constitution of the United States. . . .

"In this case, however, the characterization of the tax by the state court of last resort is a fair index of its actual operation and effect upon commerce. Soon after the passage of the act, in Knisely v. Cotterel, 196 Pa. St. 614, that court was called upon to construe it and to answer objections raised under the Constitution of the State and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and in the course of an elaborate opinion declared (p. 630): 'An examination of the details of the provisions of the present act makes it clear that the tax, as held by the learned judge below, is upon the business of vending merchan-

dise, and that the classification is based on the manner of sale, and within each class the .tax is graduated according to the gross annual volume of business transacted. This is apparent from the fact that the amount of the tax over the small fixed license fee is determined in every case by the volume of business, measured in dollars, and the rate at which it is to be levied is according to the manner of sale.'

"The bare question, then, is whether a state tax imposed upon the business of selling goods in foreign commerce, in so far as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the Federal Constitution. Although dual in form, the question may be treated as a single one, since it is obvious that, for the purposes of this case, an impost upon exports and a regulation of foreign commerce may be regarded as interchangeable terms. And there is no suggestion that the tax is limited to the necessities of inspection, or that the consent of Congress has been given.

"We are constrained to hold that the answer must be in the affirmative. No question is made as to the validity of the small fixed tax of three dollars imposed upon wholesale vendors doing business within the State in both internal and foreign commerce; but the additional imposition of a percentage upon each dollar of the gross transactions in foreign commerce seems to us to be, by its necessary effect, a tax upon such commerce, and therefore a regulation of it; and, for the same reason, to be in effect an impost or duty upon exports. This view is so clearly supported by numerous previous decisions of this court that it is necessary to do little more than refer to a few of the most pertinent. [Citing cases.] . . .

"In Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 695, the court, again speaking by Mr. Chief Justice FULLER, said: 'It is settled that where, by way of duties laid on the transportation of the subjects of interstate commerce, or on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a State on interstate commerce, such taxation amounts to a regulation of such commerce and cannot be sustained.'

"The tax now under consideration, so far as it is challenged, fully responds to these tests. It bears no semblance of a property tax, or a franchise tax in the proper sense; nor is it an occupation tax except as it is imposed upon the very carrying on of the business of exporting merchandise. It operates to lay a direct burden upon every transaction in commerce by withholding, for the use of the State, a part of every dollar received in such transactions. That it applies to internal as well as to foreign commerce cannot save it; for, as was

said in case of the State Freight Tax, 15 Wall. 277, 'The State may tax its internal commerce, but if an act to tax interstate or foreign commerce is unconstitutional, it is not cured by including in its pro-- visions subjects within the domain of the State.' That portion of the tax which is measured by the receipts from foreign commerce necessarily varies in proportion to the volume of that commerce, and hence is a direct burden upon it." ·

The same ruling has been made where a state has attempted to levy a tax upon receipts of carriers for transporting freight which constituted interstate commerce. [Fargo v. Michigan, 121 U. S. 230; Reading Railroad Co. v. Pennsylvania, 15 Wall. 232; Phila. Steamship Co. v. Pennsylvania, 122 U. S. 326; Sonneborn Bros. v. Cureton, 262 U. S. 506.]

To the same effect are those cases denying the right of a State to levy a tax upon the receipts of telegraph companies earned in the business of sending and receiving telegraphic messages between such State and other States. [Telegraph Company v. Texas, 105 U. S. 460; Ratterman v. Telegraph Co. 127 U. S. 411.]

The case of American Manufacturing Co. v. St. Louis, 270 Mo. 40, 192 S. W. 402, and a case of the same title reported in 250 U. S. 459, are cited in supposed support of respondent's contention. There the license tax upon manufacturers was based upon goods manufactured in St. Louis. The amount of the tax was measured by the sales of such goods, regardless of where such goods were sold. That case is clearly distinguished in State ex rel. International Shoe Company. v. Chapman, 311 Mo. 1. c. 9. When it was sought in the latter case to base the license tax upon relator as a manufacturer in part upon shoes manufactured outside of Missouri, the tax was held to be un- authorized and illegal. Likewise, when respondent seeks to base the license tax of a merchant upon the value of goods sold outside of Missouri, upon the same reasoning, the tax should be regarded as un- authorized and illegal.

It was stipulated in this case that the *ad valorem* tax imposed upon property in St. Louis, other than the property of merchants and manufacturers, as of June 1, 1926, was at the rate of $2.58 on each one hundred dollars of valuation. Respondent now contends that, as relator's *ad valorem* tax as a merchant (twenty cents on each one hundred dollars' valuation) and its license tax, both as a merchant and as a manufacturer, aggregate less than it would be required to pay if the *ad valorem* tax on its tangible property had been imposed at the rate which applies to other property in St. Louis, the license taxes as a merchant and as a manufacturer are in effect a commuta- tion tax levied in place of all other taxes on such merchant's and

manufacturer's personal property in St. Louis and therefore the tax in question is not violative of the Commerce Clause of the Federal Constitution. To this proposition respondent cites the following cases: N. W. Mutual Life Ins. Co. v. Wisconsin, 163 Wis. 484, 247 U. S. 132; United States Express Co. v. Minnesota, 223 U. S. 335, 56 L. Ed. 459; Cudahy Packing Co. v. Minnesota, 246 U. S. 450; State of Maine v. Grand Trunk Railway, 142 U. S. 217; Baltic Mining Co. v. Massachusetts, 231 U. S. 68; Hump Hairpin Co. v. Emmerson, 258 U. S. 290.

The first case cited reports the opinions in the same case as decided by the State Supreme Court and by the United States Supreme Court. In that case and in the United States Express Company case and the Cudahy Packing Company case, the state statute required the payment of a certain per cent of earnings of the taxpayer to be paid to the state and it was provided that such payment should be *in lieu of all other taxes*. In the United States Express Company case (223 U. S. 1. c. 346) and evidencing the theory upon which the United States Supreme Court sustained the tax in all three cases, Mr. Justice DAY said:

"The statute itself provides that the assessments under it 'shall be in lieu of all taxes upon its property.' In other words, this is the only mode prescribed in Minnesota for exercising the recognized authority of the State to tax the property of express companies as going concerns within its jurisdiction. If not taxed by this method, the property is not taxed at all. In this connection, the language of Mr. Justice PECKHAM in McHenry v. Alford, 168 U. S. 671, while it was not necessary to the decision of the case, is nevertheless apposite: 'When it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon the gross earnings, but was a tax upon the lands and other property of the company, and that the method adopted of arriving at the sum which the company should pay as taxes upon its property was by taking a percentage of its gross earnings.'

"The tax in the present case is not like those held invalid in the Galveston case and the Oklahoma case, being in addition to other state taxation reaching the property of all kinds of the express company."

In Maine v. Grand Trunk Railway Co., supra, the tax levied upon receipts of the railroad, a portion of which constituted interstate commerce, apparently was not in lieu of all other taxes. The majority opinion seems to lend some support to the contention of respondent. Mr. Justice BRADLEY dissented in a vigorous opinion, in

which Justices Harlan, Lamar and Brown concurred. The authoritative value of the case appears to have been largely destroyed by later cases. In Oklahoma v. Wells, Fargo & Company, 223 U. S. 298, a tax was laid upon the gross receipts of certain public service corporations, which tax was "in addition to the taxes levied and collected upon an *ad valorem* basis," as is true in the case at bar. The tax was held invalid as a burden upon interstate commerce, because its imposition was not limited to receipts upon business done within the State.

In Galveston v. Texas, 210 U. S. 217, and in distinguishing that case from and referring to Maine v. Grand Trunk Railway Company, supra, it was said: "The authority of the Philadelphia Steamship Company case was accepted without question, and the decision was justified by the majority as not in any way qualifying or impairing it. The validity of the distinction was what divided the court." The opinion then goes on to say that it was decided in the Philadelphia Steamship Company case (122 U. S. 326) "that a tax upon the gross receipts of the steamship corporation of the State, when such receipts were derived from commerce between the States and with foreign countries, was unconstitutional. We regard this decision as unshaken and as stating established law."

Maine v. Grand Trunk Railway Company, represented the opinion of a bare majority of the United States Supreme Court when it was decided. That fact and its subsequent limitation and clear distinction by the court in later cases have destroyed its value as an authority for the contention of respondent in this case.

The case of Baltic Mining Company v. Mass., supra, is so different in its facts from the case at bar as not to be controlling, even if, as pointed out in relator's reply brief, that case had not been effectually overruled by Cement Company v. Massachusetts, 268 U. S. 1. c. 218.

The case of Hump Hairpin Co. v. Emmerson, supra, does not appear to be in point on its facts. The fee there assessed upon a foreign corporation doing business in Illinois was based upon the proportion of its capital stock represented by property located in and business transacted within the State. As all of the property of the corporation was located in Illinois and all its business was transacted there, the fee was assessed against the entire capital stock of the corporation. The fact that part or all of the business transacted was interstate was not deemed controlling. Certainly the tax was not a direct burden upon or a regulation of interstate commerce. At most, the tax was only indirectly so.

In the case at bar the merchant's license tax is based directly upon the amount of such merchant's sales, regardless of whether or not such sales constituted interstate or foreign commerce. The tax took a definite portion of each dollar of sales made in such commerce.

112

The cases we have cited and considered quite uniformly and in no uncertain language condemn this sort of tax as an undue burden upon and an improper interference with or regulation of interstate commerce.

Further consideration of adjudicated cases would not more clearly demonstrate the invalidity of the tax, in so far as it is based upon sales made in interstate and foreign commerce, but such consideration would unduly and unnecessarily lengthen this opinion. The record of the Board of Manufacturers and Merchants Tax Equalization, now in the custody and under the control of respondent, should be quashed, to the extent that it imposes a merchant's license tax upon relator, based upon sales made by it in excess of the sum of $6,210,315.23. Let our order go accordingly. All concur.