CITY OF CAPE GIRARDEAU, a Municipal Corporation, v. FRED A. GROVES MOTOR COMPANY, a Corporation, Appellant.—142 S. W. (2d) 1040.

Division Two, September 10, 1940.

*Spradling & Stroen* and *Finch & Finch* for appellant.

*R. B. Oliver III, B. Hugh Smith,* and *J. Grant Frye* for respondent.

BOHLING, C.—The City of Cape Girardeau, Missouri, recovered a judgment of $1,140.75 against Fred A. Groves Motor Company, a

corporation, for a city license tax due July 16, 1938. Defendant appealed and presents the main contention that the ordinance provisions for measuring the tax violate the uniformity provision of Sec. 3, Art. 10, of the Missouri Constitution.

Appellant, since November, 1914, has been engaged in business as an automobile dealer and automobile parts dealer in Cape Girardeau. Cape Girardeau is a city of the third class and authorized ". . . to levy and collect license tax on wholesale houses, . . . wholesale merchants, merchants of all kinds, . . . automobile agents and dealers, automobile accessory dealers, . . ." et cetera. [Laws 1931, p. 276, Sec. 6840, R. S. 1929.] Ordinance No. 752, adopted September 11, 1926, and Ordinance No. 829, substituting Section 2-A in lieu of original Section 2 of Article 2 of Ordinance No. 752, adopted July 5, 1938, are involved.

Article 1 of Ordinance No. 752 is entitled "Definitions" and, in part, reads:

"Section 1: The following words, terms and phrases, when used in this ordinance, have the meanings ascribed to them in this section except where the context clearly indicates a different meaning: . . .

"'Auto Accessory Dealer' includes any person, etc., who shall buy, manufacture, or assemble and sell or offer for sale any tires or other fixtures, appliances or accessories to or for automobiles, trucks or trailers except persons, etc., who are licensed as merchants.

"'Automobile Dealer' includes any person, etc., who shall buy, for the purpose of sale or trade, or who shall sell, trade or offer to sell or trade automobiles or motor vehicles."

The definitions of many other occupations and businesses are set forth.

Other provisions, material here, are found in Article II of the ordinance and read:

"Section 1: There is hereby levied a license tax upon the privilege of engaging within the limits of this City, in any of the following named occupations or businesses, or doing or operating any of the following named things to-wit: Auto Accessory Dealer, . . . Automobile Dealer, Bakery, . . . [Some forty odd occupations or businesses are specifically named.]

"Section 2-A: Said license tax shall be in an amount to be determined in each individual case as follows: Where the annual gross sales or gross receipts of such licensee or applicant for license from such business, occupation, or calling, during the preceding calendar year, have amounted to less than Five Thousand ($5000.00) Dollars, the sum of $11.25 per annum; Where the annual gross sales or gross receipts of such licensee or applicant for license from such business, occupation or calling, during the preceding calendar year, have amounted to more than Five Thousand ($5000.00) Dollars, the said license tax shall, per annum, be $11.25 for the first Five Thousand

($5000.00) Dollars and $2.25 per One Thousand ($1000.00) Dollars for each Thousand Dollars or fractional part thereof in excess of said Five Thousand ($5000.00) Dollars.''

''Section 6: Upon making application for license under provisions of this Article, the applicant shall, in person or by duly authorized officer or agent, make and file with the City Clerk in a manner and form prescribed by him and upon blanks furnished by said City Clerk, a statement showing the amount of gross receipts from sales, services and transactions by such applicant during the preceding year and such statement shall be verified by the affidavit of the applicant or his duly authorized officer or agent. Provided that when any person and etc., who has not been engaged in such business during the preceding calendar year shall make application for license, the City Clerk shall estimate the annual gross business which such applicant may be expected to enjoy during the first fiscal year and shall fix the amount of license tax which shall be paid before the license is issued, upon such estimated gross business at the rates set forth in Section II of this Article. At the end of the year for which such license was issued the licensee.shall furnish the sworn statement in this Section provided and a readjustment of the license tax for such year shall then be made upon the basis of the gross receipts actually enjoyed.''

Other articles of the ordinance are immaterial; but we mention, for instance, that Article 3 levies specified annual license taxes upon a large number of specifically named subjects.

That the ordinance is a revenue, not a regulatory measure, an exercise of the taxing power, and subject to the provisions of Sec. 3 of Art. 10 of the Missouri Constitution is not questioned. [City of St. Charles v. Schulte, 305 Mo. 124, 128, 264 S. W. 654, 655[3, 4], citing cases.] Said Section 3 provides: ''. . . They [taxes] shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax . . .''

Appellant says the measuring of the tax by the ''annual·gross sales or gross receipts'' ''during the preceding calendar year'' of licensees who were engaged in business during such calendar year under Sec. 2-A of the ordinance and measuring the tax of licensees who had not ''engaged in such business during the preceding calendar year'' by estimating ''the annual gross business which such applicant may be expected to enjoy during the first fiscal year'' and at the end of the year adjusting the tax for such year ''upon the basis of gross receipts actually enjoyed'' by said licensee under Sec. 6 of the ordinance results in nonuniformity of the tax upon the same class of subjects. For instance: If appellant did a $500,000 business in the calendar year of 1937, then when appellant's license expired on July 16, 1938, its license for the year ending July 15, 1939, would be $1125. Now if a new dealer began business on July 16, 1938, and did $250,000 worth of business between July 16, 1938, and July 15,

1939, such licensee would pay $562.50. If appellant's business was only $250,000 between July 16, 1938, and July 15, 1939, appellant would still pay $1125 for the privilege. If the new dealer and appellant each did a $1,000,000 business between July 16, 1938, and July 15, 1939, the new dealer would pay a tax of $2250 whereas appellant would pay only the $1125 for the same privilege. There was testimony, uncontradicted, that following the calendar year 1937 appellant's business fell off more than forty per cent.

At first of a different view, we are of opinion our course has been charted. "The tax is uniform when it operates with the same force and effect in every place where the subject is found." Head Money Cases, 112 U. S. 580, 594, 28 L. Ed. 798, 802, 5 Sup. Ct. 247, 252, speaking of Art. I, Sec. 8, U. S. Const., reading ". . . all duties, imposts and excises shall be uniform throughout the United States." [See State ex rel. v. Chicago, B. & Q. Rd. Co. (Banc), 195 Mo. 228, 238, 93 S. W. 784, 786.] The word "uniform" and the phrase "same class of subjects" are not of identical legal effect in the clause "They shall be uniform upon the same class of subjects" in Sec. 3, Art. 10, Mo. Const. "Uniform" has reference to the measure, gauge or rate of the tax. "Same class of subjects" has reference to the classification of the subjects of taxation for the purposes of the tax. Uniformity does not mean that the same rate must be levied upon all subjects, but when the subjects are once classified the rate must be uniform upon all subjects of the same class. [Consult State ex rel. v. Shipman (Banc), 290 Mo. 65, 75 (III, IV), 234 S. W. 60, 62 (III, IV); State ex rel. v. Switzler (Banc), 143 Mo. 287, 331, 45 S. W. 245, 254, 40 L. R. A. 280, 65 Am. St. Rep. 653.]

Section 1 of Art. 1 of the ordinance specifically defines the classes of subjects affected. The legislative department of the city made no attempt to subclassify any of the forty-odd classes of subjects specifically named in Sec. 1 of Art. 2 of the ordinance into those who had been and those who had not been "engaged in such business during the preceding calendar year" in said city; but so far as any classification provisions of the ordinance are concerned, placed all in the same class for license tax purposes irrespective of the time they first engaged in such business within said city. Consistent therewith Sec. 2-A of Art. 2 imposed a graduated rate or measure of the license tax upon all subject to the tax. Section 6, however, prescribed a different rate or measure of the license tax for those specifically named in Sec. 1 of Art. 2 who had not been engaged in such business within the city "during the preceding calendar year." To hold the subjects named in Sec. 1 of Art. 2 of the ordinance are subdivided and again classified unto those who had been and those who had not been engaged in such business within the city "during the preceding calendar year" is to establish classes of subjects not specifically established by the lawmakers in the classification provi-

sions of the ordinance, and smacks of judicial legislation and classification. The issue, as the writer views it, goes to the uniformity of the rate or measure of the tax rather than the reasonableness of the lawmakers' classification of the subjects of the tax; and since the ordinance provisions inform us the lawmakers placed, for instance, all automobile dealers in one class for the purpose of the license tax, constitutional requirements that the tax be "uniform upon the same class of subjects within the territorial limits of the authority levying the tax," which requires the rate or the measure of the tax to be the same for all automobile dealers within the city, necessitates a holding that the ordinance contravenes constitutional provisions by reason of Sec. 6 prescribing a rate or measure of the tax for some automobile dealers differing from that prescribed for other automobile dealers. [Consult Kansas City v. Grush, 151 Mo. 128, 134, 135, 52 S. W. 286, 287.]

The first case presenting an issue of uniformity under Sec. 3, Art. 10, Mo. Const., held an ordinance placing a license tax of $100 upon owners of meat-shops in one portion of a city and $25 in other portions of said city in conflict with said constitutional provison; reasoning: ". . . all persons engaged in the same business should be taxed alike." [St. Louis v. Spiegel, 75 Mo. 145, 147. See St. Louis v. Spiegel, 90 Mo. 587, 2 S. W. 839.]

In Boonville National Bank v. Schlotzhauer (Banc), 317 Mo. 1298, 1319, 298 S. W. 732, 741, 55 A. L. R. 489, 502, the bank sought to enjoin the collection of an alleged illegal portion of a tax resulting from the intentional and systematical assessing of its shares of stock for the purposes of taxation at 100 per centum while all other property was assessed at only 75 per centum of its true value. The court said: "There is no reason why bank stock should be assessed at its full value and all other property at only seventy-five per cent of its full value. Such action is not only a fraud upon the taxpayers who are thus assessed the full value of their property, but it is a violation of the uniformity and due process clauses of our State Constitution, as well as a violation of the Fourteenth Amendment to the Federal Constitution."

Brinkerhoff-Faris Trust & Savings Co. v. Hill, was twice before court en banc. Plaintiff's complaint was that its bank stock was assessed at 100 per centum of its value, whereas other property was assessed at 75 per centum of its value or less. Upon first consideration (323 Mo. 180, 194, 19 S. W. (2d) 746, 752) plaintiff's bill was dismissed for reasons not material here, but court en banc said: "We do not recede from any of the positions taken in the Schlotzhauer case . . ." Upon second consideration (the cause having been remanded by the United States Supreme Court—see 281 U. S. 673, 50 Sup. Ct. 451, 74 L. Ed. 1107), court en banc, upon the authority of the

Schlotzhauer and other cases, held the levy in excess of 75 per centum of the value of plaintiff bank's shares of stock invalid (328 Mo. 836, 42 S. W. (2d) 23, 27.

[See, also, Columbia Terminals Co. v. Koeln (Banc), 319 Mo. 445, 455, 3 S. W. (2d) 1021, 1024[5]; Jefferson City Bridge & Transit Co. v. Blaser, 318 Mo. 373, 386, 300 S. W. 778, 785[11, 13, 14]; City of St. Louis v. Consolidated Coal Co., 113 Mo. 83, 88(III), 20 S. W. 699, 700(3).]

In the instant case the ordinance provisions specifically direct the nonuniform application of the rate or measure of the tax upon identical classes of subjects as established and recognized by the ordinance.

If we treat the division of those subject to the tax into those who had been and those who had not been "engaged in such business during the preceding calendar year" as a subclassification of the classes subject to the tax, rather than as affecting the uniformity of the rate or measure of the tax, such subclassification may not be sustained.

Ex parte Dreibelbis, 133 Tex. Cr. 83, 85, 109 S. W. (2d) 476[4], had under consideration an ordinance imposing a license fee on temporary merchants, defined as "any person, . . . resident or otherwise, who shall engage in the business of selling . . . any merchandise . . . in the city . . . and who has not been engaged in and conducting a similar business for at least twelve months prior to the effective date of this ordinance." The court held: "That the ordinance in question is discriminatory is clearly demonstrated by the fact that a person who has been engaged in one of the designated businesses in said city for a year or more is exempt from the payment of the tax, while another person who has not been so engaged for such length of time is subject to the payment of the tax, and, for his failure to do so, punishable by fine, although both parties may be engaged in the same kind of business, carrying the same kind and the same amount of merchandise. If this is not discrimination, then what is it?"

In Ex parte Wacholder, 1 Cal. App. (2d) 254, 258[4, 5, 6, 7, 9], 36 Pac. (2d) 705, 707[4, 5, 9, 10, 12], the court considered an ordinance requiring florists "not heretofore having been so engaged for at least 365 days last past" to, in addition to obtaining a license, "post a cash bond" et cetera. The court said: "Here is a plain discrimination between the persons engaged in a like business made dependent upon the time in which they have been so engaged." "Nor has the city council the power to impose a penalty upon one person transacting a like business with another person simply because person No. 1 may not have been in business for quite so long a period as person No. 2. Such ordinances . . . are simply exclusive and discriminatory . . ."

Jersey City v. Chasan, 81 N. J. L. 315, 79 Atl. 1058[2], considered an ordinance requiring a license to drive a horse attached to a busi-

ness vehicle and, also, prohibiting any person from driving any such vehicle unless he shall have been a resident of the city for three months. The provision requiring three months' residence was held "an unreasonable regulation, as it discriminated between citizens who have resided in the city more than three months and those who have not."

The city cites many authorities. Ploch v. City of St. Louis (Banc), 345 Mo. 1069, 138 S. W. (2d) 1020, 1023[1], involved an ordinance requiring the annual registration of merchants engaged in selling cigarettes and "a tax of $1 per thousand on cigarettes sold, offered, or displayed for sale at retail. The tax is collected by the sale of stamps to the merchant, who must place them on packages of cigarettes for sale." The measure of the tax was the same upon all subject to the tax. The court said (1023[4]) cigarettes are not a " 'useful commodity;' " "the nicotine is harmful;" the size and mildness "tempt the young to indulgences which produce tobacco addicts. This justifies the isolation of cigarettes from other forms of tobacco." Ex parte Asotsky (Banc), 319 Mo. 810, 820, 5 S. W. (2d) 22, 25[4], is to like effect. The city's cases do not rule the issue under discussion; see, for instance: Simmons Hardware Co. v. St. Louis (Mo.), 192 S. W. 394, 396[2]; Viquesney v. Kansas City (Banc), 305 Mo. 488, 499 (V), 266 S. W. 700, 703[11]; State ex rel. People's Motorbus Co. v. Blaine (Banc), 332 Mo. 582, 590[4], 58 S. W. (2d) 975, 978[3]; City of Sedalia ex rel. v. Standard Oil Co., 66 Fed. (2d) 757, 760[4, 5]; Automobile Gasoline Co. v. St. Louis, 326 Mo. 435, 445, 32 S. W. (2d) 281, 284[9]. State ex rel. International Shoe Co. v. Chapman, 311 Mo. 1, 14, 276 S. W. 32, 35, held an ordinance did not authorize the computation of a license tax on shoes manufactured beyond the jurisdiction of the city. State ex rel. International Shoe Co. v. Chapman, 318 Mo. 99, 106, 300 S. W. 1076, 1078, involved the commerce clause of the Federal Constitution.

Statutes and ordinances which relate to persons or things of a class are general laws, but statutes and ordinances which relate to particular persons or things of a class are special laws, setting up forbidden discriminations and arbitrary classifications. An ordinance levying a license tax on all occupations within the city which has not been engaged in the business "during the preceding calendar year" while exempting those which had been so engaged during the preceding calendar year, or *vice versa,* would not meet constitutional requirements. The difference between the instant ordinance provisions and the illustration is one of degree and not of principle under a constitutional provision requiring the tax to be uniform upon the same class of subjects. For instance, all automobile dealers within the ordinance definition of automobile dealers are engaged in precisely the same business. There is no natural and substantial difference, inhering in the subject matter with respect to localities, persons, occupations or property, between the automobile dealers who have

been engaged in business for a number of years and those who have been engaged in such business for less than a year within a given city justifying any distinction for the purposes of taxation for revenue. [Consult Ex parte French, 315 Mo. 75, 81(II), 285 S. W. 513, 514[1, 2]; Lige v. Chicago, B. & Q. Rd. Co. (Banc), 275 Mo. 249, 258, 204 S. W. 508, 510[2, 3].] Broadly put, constitutional class legislation must include all who belong and exclude all who do not belong to the class. Legislative departments of governmental authorities may not split a natural class and arbitrarily designate the dissevered factions of the original unit as distinct classes and enact different rules for the government of each. "This would be mere arbitrary classification without any reason on which to rest, and would resemble a classification of men by the color of their hair or other individual peculiarities, something not competent for the Legislature to do." State v. Julow, 129 Mo. 163, 177 (II), 31 S. W. 781, 783(2), 29 L. R. A. 257, 50 Am. St. Rep. 443; State v. Miksicek, 225 Mo. 561, 572 (II), 125 S. W. 507, 510 (2), and cases cited.

The City says that since there was no evidence "of a new automobile dealer just starting in the business," appellant is in no position to urge the issue. The constitutionality of an ordinance is generally a question of law involving an interpretation of its terms, objects, purposes and practical operation rather than a question of fact. The ordinance exacts a license tax and provides penalties. Appellant is subject to its provisions, if valid. The city seeks to enforce the ordinance against appellant. St. Louis v. Spiegel, 75 Mo. 145, was before the court upon a judgment sustaining defendant's motion to dismiss a prosecution under an ordinance on the ground the ordinance contravened Sec. 3, Art. 10, of our Constitution. [See St. Louis v. Spiegel, 8 Mo. App. 478.] The case went off on the provisions of the ordinance. A similar situation existed in the City of Springfield v. Smith (Banc), 322 Mo. 1129, 19 S. W. (2d) 1. In the instant case the City Clerk testified: "There are cases when new concerns want to start in business." This is not a case wherein one not subject to the provisions of the ordinance—an interloper—questions its constitutionality or one questions provisions of the ordinance which have no bearing upon the real controversy or the constitutionality of the ordinance is attacked upon hypothetical or unreal possibilities or prospective conditions which may never arise. The point is ruled against the City.

It follows that the provisions of the ordinance establishing different measures for the tax upon automobile dealers who had not been engaged in such business during the preceding calendar year and upon automobile dealers who had been engaged in such business during the preceding calendar year are unconstitutional and void.

The judgment is reversed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.