THE LIFE ASSOCIATION OF AMERICA, Appellant, v. THE BOARD OF ASSESSORS OF ST. LOUIS COUNTY, Respondent.

1. *Bill of rights, section 30 — Proceedings under, imperative.*— Section 30 of the Missouri bill of rights, which declares that "all property subject to taxation ought to be taxed in proportion to its value," is a prohibition against taxation in any other mode. The word *ought* therein used is not directory but mandatory.

2. *Revenue — Taxation — Exemption — Commutation — Statute, construction of.*—Section 40, in regard to the incorporation and regulation of life insurance companies (Wagn. Stat. 752), declaring that the payment of certain fees from the companies shall be received in lieu of taxes, cannot have the effect of exempting them from taxation. That section is rather an exemption than a commutation. But the Legislature has no power, under the present constitution, to exempt property from taxation, or to commute the payment of taxes.

3. *Revenue — Corporation, property of — Shares of stock — Assessment.*—Notwithstanding that the property of a corporation does not embrace shares of stock, and hence cannot be assessed under sections 23-4 of the statute concerning revenue (Wagn. Stat. 1169), yet, being owned by the company and in its possession, it may be assessed under the general revenue law.

*Appeal from St. Louis Circuit Court.*

*Irwin Z. Smith*, for appellant.

The assessment levied was illegal and void, and the remedy prayed for should be granted. The provision in the constitution (§ 16, art. XI), that "no property, real or personal, shall be exempt from taxation," is not infringed by the law of 1869, which

provides that mutual insurance companies doing business in this State shall pay certain sums of money in lieu of the regular amount assessed. Under that clause of the constitution the Legislature has a right to commute the amount and say that the corporation shall pay a definite, certain sum, in prosperity or adversity. This plaintiff came into existence under the guarantees of that law. The courts of other States have upheld similar statutory provisions enacted under constitutions similar to our own. (See 30 Ill. 146 ; 17 Ill. 291.) It is a wise policy on the part of the Legislature to make such a provision. It not only prevents capital from flowing out of the State, but brings in large amounts from other States. Under the old order of things, a few colossal institutions in New York and Connecticut establish their agencies here and draw out our money, which returns to us only by being secured by mortgage and upon the payment of interest at ten per cent. This was rendered possible by the fact that these foreign corporations could do business here through agencies, mainly by paying fees, while our companies were subjected to the payment of heavy taxes.

Appellant submits that though the court may be of opinion that the act of 1869 was unconstitutional, yet as no power had been given by the Legislature to levy this tax, the levy was void. The board of assessors cannot make laws, and in the absence of law they can make no assessment, although the Legislature have the right to impose the tax or no right to give exemption.

*T. T. Gantt*, for appellant.

I. No tax can be imposed or collected without a law or declaration of legislative will authorizing and directing its imposition and collection.

II. The failure of the Legislature to impose a tax will not justify either assessors or collectors, or courts of justice, in assuming to supply its omission.

III. The exemption from State, county and municipal taxation, which is provided by section 40 of the act of March 10, 1869, is no contravention of section 16 of article XI of the constitution, because this is not an absolute exemption but a commu-.

tation which the State has undoubted power to make. (Illinois Cent. R.R. Co. v. McLean County, 17 Ill. 291 ; O'Kane *et al.* v. Treat *et al.*, 25 Ill. 561 ; Hunsaker *et al.* v. Wright *et al.*, 30 Ill. 146 ; Cool. Const. Lim. 517.)

IV. Nor is the provision in section 40 of the act of March 10, 1869, in opposition to section 30 of article I, which declares that " all property subject to taxation ought to be taxed in proportion to its value," which provision has been repeatedly the subject of judicial examination, and has been declared to mean only that property shall be taxed in proportion to its value and not specifically, and that no idea of uniform or equal taxation is conveyed by it. (Hamilton & Treat v. St. Louis County Court, 15 Mo. 1 ; State v. North *et al.*, 27 Mo. 464, 483.)

V. So far as we have any declaration of legislative will on the subject of taxing the property of this defendant, it declares that no tax shall be collected on the property of the Life Association, commutation having been made therefor. Now whether the Legislature has kept itself within the proper bounds in thus declaring, seems to be scarcely a material inquiry. If it has, then the property of the Life Association is not taxable. If it has not, it remains true that there is no legal provision for assessing and collecting taxes upon it. Either way, the action of the board of assessors was illegal, and the judgment of the Circuit Court must be reversed.

*F. & L. Gottschalk*, for respondent.

I. The construction of section 40, Wagn. Stat. 752, as contended by appellant, renders the same clearly unconstitutional. By the constitution it is provided that, 1st, " no property, real or personal, shall be exempt from taxation" (art. XI, § 16); 2d, "' that all property subject to taxation ought to be taxed in proportion to its value." (Art. 1, § 30.)

The first clause appears for the first time in the new constitution ; the second clause appears in the former constitution, and has received a judicial construction in Hamilton & Treat v. The St. Louis County Court, 15 Mo. 3, where the court says : "This clause is evidently mandatory upon the general assembly, when

exercising the taxing power, and furnishes a rule which is not to be departed from." (See also State v. North, 27 Mo. 464.) The words used, " ought to be," should be construed as mandatory. They are evidently so used in that instrument in art. I, section 14, about elections ; section 15, about courts of justice ; section 16, that no private property ought to be taken for public use without just compensation ; section 23, that the people ought to be secure in their persons. It was the evident intention of the framers of the constitution that all property should bear its proportionate share of the burdens of government. But the construction of this section by appellant would lead to the conclusion that every company, where it owns property to the amount of millions or to the amount of ten thousand dollars, must pay the same taxes. This property, taxed according to the rates fixed by law, and as all other property is taxed, according to its value, would yield :

The amount returned by the vice-president being....................................$294,000

| | | | | |
|---|---|---|---|---|
| State tax, at the rate of 0.50-100 per cent., or 5 mills......................$1,470 |
| County tax, " " 0.40-100 " or 4 mills....................... 1,176 |
| School tax, " " 0.40-100 " or 4 mills....................... 1,176 |
| City tax, " " 1.50-100 " ....................... 4,410 |

Total................................................................................................$8,232

But appellant contends that by paying $150 fees to the superintendent of the insurance department, it is exempt from paying any further tax whatever.

II. The agreement of appellant that, notwithstanding the constitutional provisions cited, the general assembly can commute the taxes, and that it did so in this instance, cannot be sustained :

(a) Because there is no commutation in this case, as the law simply requires the payment of certain fees to assist in maintaining an insurance department ; nor do these fees bear any proportion to the value of the property.

(b) Because the commutation is contrary to the spirit of the constitution, and would be the same thing as claiming that the Legislature can virtually exempt from taxes ; for, if it commute $8,000 taxes for $150, why not for $1 ?

The cases holding that the Legislature has such power are

either not passed upon like constitutional provisions, or are erroneous. The weight of the authorities is inconsistent with this doctrine. (City of Zanesville v. Richard, 5 Ohio St. 539; Kneeland v. City of Milwaukee, 15 Wis. 454; Cool. Const. Lim. 494; 16 Mich. 269; 3 Ohio St. 15; 10 Wis. 258; 22 Wis. 660; 12 Allen, 504; 15 B. Monr. 498.)

III. The proper construction of section 40 is, however, this: that the company shall, by paying the fees therein provided, be exempt from paying any taxes on its business or its franchise. The section does not state that the property shall not be further taxed, it only speaks of the company; and it evidently means that no further license tax, or tax on its business, shall be levied. See Goodin v. Appeal Tax Court, 3 How. 133, in which the court say that "the corporate property is separable from the franchise." The Legislature of Maryland continued the charter of several banks in 1845, upon condition that they would make a new one and pay a school tax. This would have exempted their franchise, but not their property, from taxation. (West River Bridge Co. v. Dix, 6 How. 507; Providence Bank v. Billings, 4 Pet. 514.)

IV. The company, admitting that it owns this amount of property, was liable to taxation for it; and the provisions of the statute authorizing it to be taxed, although no particular way of assessing mutual companies, are still sufficient. (Wagn. Stat. 1159, ch. 2, § 1.)

*Thos. C. Reynolds,* for respondent.

I. The insurance law must be interpreted in subordination to the constitutional provisions that no property, except of the kind the constitution specifies, shall be exempt from taxation, and that all property subject to taxation shall be taxed in proportion to its value. Therefore, the fees charged insurance companies are merely for the license to trade; their property must be taxed in addition.

II. The insurance law, in connection with the revenue, cannot be construed as amounting to an omission to tax, which the courts cannot supply without usurping legislative power. If the clause

of the insurance law, which appellant claims to exempt it from tax, is unconstitutional if taken alone, it is as if never created, and does not repeal the revenue law to the extent of creating an omission to tax. It must be strictly construed. (Dwar. Stat. 367; Cool. Const. Lim. 178 ; Blackw. Tax Tit. 409.)

III. The immunity claimed by appellant is an exemption, not a commutation. The legislative right to commute a tax under a constitution like ours rests on a slim authority, slightingly cited in Cool. Const. Lim. 517.

IV. In our constitution the word " ought " is mandatory. (Compare sections 9, 14–16, 23, 32 of article I.)

V. The insurance law can be reasonably construed merely as an exemption from taxes on the companies or persons, that being constitutional.

WAGNER, Judge, delivered the opinion of the court.

The assessors of St. Louis county assessed for the year 1870, furniture, money on hand, and bonds and notes of the value of $294,000, belonging to the appellant. To obtain relief from this assessment the proceeding was taken to the Circuit Court by *certiorari*, but there the assessment was sustained. The appellant is an association organized on the mutual plan for the assurance of lives, and it is claimed that by the law of this State their property is wholly exempt from assessment and taxation. This claim is based on the fortieth section of the act in regard to the incorporation and regulation of life insurance companies, approved March 10, 1869 (Wagn. Stat. 752, § 40). The section provides that the life insurance companies referred to shall pay certain fees which shall go to the support of the insurance department, and shall be in lieu of all taxes, fees and licenses whatsoever collected for the benefit of the State; but that companies organized under the laws of the United States, or any other State, doing in this State the business mentioned, shall be subject to existing laws relating to fees and licenses for county and municipal purposes. The further provision is then made that all companies organized under the laws of this State and doing the business mentioned shall pay all fees required in the section, which shall be in lieu of

all fees or taxes whatsoever, except that they may be taxed upon their paid-up capital stock in the same manner as other property in the county, for county and municipal purposes.

Under the organization of the appellant it has no paid-up capital stock, and its property consists wholly of its assets ; and if effect is given to the section, its entire property is exempt upon the payment of the designated fees. This law must be construed in subordination to the constitution of the State, and the question is whether it violates that instrument. Under the former constitution the Legislature might have undoubtedly passed the law, as there was then no provision against exemptions, and the whole matter of taxation was confided to the legislative discretion. But there are two clauses in the present constitution which have a direct bearing on the subject, and which must control all legislative action.

The first is embodied in the declaration of rights (art. I, § 30), which declares that " all property subject to taxation ought to be taxed in proportion to its value ; " and the second is section 16 of article XI, which provides that " no property, real or personal, shall be exempt from taxation except such as may be used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State."

Some criticism has been indulged in by counsel on the phraseology of the first clause, and it is contended that the word "ought" shows that the provision was simply intended to be directory ; that as to uniformity of taxation it amounts to a recommendation, but is not imperative. The old constitution used the word " shall," but it is evident from a survey of the whole instrument that the substitution of the one word for the other was not intended to produce any change in the construction or the duties enjoined. The word designated is expressive of a duty and equivalent to a prohibition against proceeding in any other way. This is abundantly manifest by comparing the phrase used with others, which all will concede are imperative and mandatory. Thus the constitution in other sections declares that " all elections *ought* to be free and open ; " that "courts of justice *ought* to be open to every person," etc.; that " no private property *ought* to be taken

or applied to public use without just compensation;" and "that the people *ought* to be secure in their persons, papers," etc. These are all positive injunctions which cannot be denied, and their obligatory force would be in nowise strengthened by inserting the word "shall" for "ought."

Under the former constitution, when this provision was in the courts for interpretation, it was decided that the clause was evidently mandatory upon the general assembly, when exercising the taxing powers, and furnished a rule which was not to be departed from. But it was said that the settlement of the question what property should be subjected to taxation was left to their discretion. (Hamilton & Treat v. St. Louis County Court, 15 Mo. 1 ; State v. North & Scott, 27 Mo. 464.) Since these decisions, however, that discretion has been withdrawn from the Legislature, and they are now expressly forbidden to exempt any property from taxation.

But it is claimed that although the Legislature may not have the power to exempt property from taxation, it has the power to commute taxes, and that the fortieth section is a commutation. In Illinois this doctrine has been announced, under a constitutional provision not entirely similar to ours, but intended certainly to produce uniformity in taxation. The first case was The Illinois Central Railroad Company v. McLean County, 17 Ill. 291, where it was held that the provision in the charter of the railroad company exempting its property from taxation upon the payment of a certain proportion of its earnings was constitutional ; and the second was the case of Hunsaker *et al.* v. Wright *et al.*, 30 Ill. 146, where the court decided that the Legislature might commute a tax for the payment of money or other equivalent. In these cases there was no claim of exemption, but sums of money were paid and burdens assumed in lieu of taxes. An attentive perusal of the cases has failed to convince me that they were decided on correct principles.

In Ohio an act of incorporation was passed exempting property, under certain circumstances, from general taxes, upon the payment of a road tax. The Supreme Court held the law to be unconstitutional, and in their opinion they use this language :

" The very last construction that should be adopted would be one that makes it conflict with the constitution ; and we are clear in the opinion that if it means what is claimed for it, and intends to provide for the exemption of any part of the property in a municipal corporation, otherwise subject to taxation, from contributing its proper proportion to the general revenue fund, it is in conflict with the second section of the twelfth article of that instrument, and should be treated as a nullity. Before the adoption of the present constitution the whole matter of taxation was committed to the discretion of the general assembly. It might be levied upon such property and in such proportion as that body saw fit. The right to make exceptions and exemptions was unquestionable. But this discretion no longer exists. The public burdens are made to rest upon the property of the State, and whenever money is to be raised by taxation, the positive injunction is that laws shall be passed, taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise ; and also all real and personal property, according to its true value in money." (City of Zanesville v. Richards, Auditor, etc., 5 Ohio St. 589.)

That case had as much of the characteristics of a commutation as the one under consideration. The State there undertook to exempt the property and make it liable only for the payment of a road tax, and here there is an exemption, and only certain fees are required. The court rejected the claim and construed the organic law according to its obvious import and the unquestioned intention of its framers.

Under a constitutional provision essentially the same as ours, enjoining a uniformity of taxation, the Wisconsin Legislature passed a law which required railroad and plank-road companies to pay for the use of the State one per cent. of the gross earnings of their respective roads, which should be in full of all taxes of every kind upon such roads or other property belonging to such companies, or the stock held by individuals therein ; and in 1855, in the case of The Milwaukee & Mississippi R.R. Co. v. The Supervisors of Waukesha County, the Supreme Court held the act to be constitutional. The case was never reported, and the judg-

ment seems to have been hastily made and not well considered. The question was again presented in 1862, in the case of Kneeland v. City of Milwaukee *et al.*, 15 Wis. 454, and the court declared that if the question were a new one they would not hesitate to hold that the act was in violation of the constitution ; but that, in view of the fact that all the taxation of the State, and all the private transactions growing out of it, had for many years been conducted on the theory of its validity, and in view of the disastrous consequences which would flow from overturning the decision after such a lapse of time, they felt bound to adhere to and abide by the former ruling.

No such difficulty environs this court in deciding this question. The constitution is now to be construed for the first time, and the determination herein will not interfere with property rights based upon a different adjudication. The section by which freedom from taxation is claimed is more of an exemption than a commutation. It does not provide for the payment of any sum to the general revenue in lieu of taxes, but only certain fees to the support of an officer. It is incredible that the Legislature intended that taxes on hundreds of thousands of dollars, which may come into the hands of wealthy corporations, should be commuted for the yearly payment of a hundred and fifty or two hundred dollars in official fees. But I am not inclined to the belief that this power of commutation exists under our present constitution. The literal reading of the two clauses hereinbefore referred to are surely in opposition to it. The constitution, by its injunction that no property should be exempt from taxation, and the requirement that it should be taxed in proportion to its value, was framed with the express view of remedying a great mischief. It is well known that under the former constitution the burdens of taxation were often unequal and unjust. Capitalists and corporations were in the habit of getting exemptions, so that a large proportion of their wealth was withdrawn from paying its proportionate share in administering the government, and a corresponding increase was thrown upon those who were least able to pay. The small property-holders, who comprise the great mass of the tax-payers, usually pay their taxes

promptly, without question, and seldom combine for the purpose of procuring any special privileges or exemptions. But capital, grasping and eager, lynx-eyed and vigilant, always ready to reach for profits and shrink from burdens, able and ready to bring powerful combinations to bear to influence legislative action, will be always ready to take advantage of a construction of the constitution which will enable it to shift the burdens it ought to bear on the shoulders of others. It was to avoid this injustice and to cut off all importunity for-class legislation, that the constitution made the provision forbidding all discrimination. But if what was intended as a safeguard for the people's rights can be avoided by granting an immunity under the pretense of accepting the merest trifle as a commutation, the instrument is practically nullified and the clause is a sheer delusion. Any construction of the constitution by this court which would virtually annul its efficiency, would be as unwarranted as it would be disastrous to the rights of our citizens. I therefore come to the conclusion that the act in question cannot have the effect of exempting the appellant's property from taxation.

It is further insisted that, although the court should be of the opinion that the act did not grant an exemption from the payment of taxes, still there was no law in force authorizing the officers to make the assessment. It is true the assessment could not be made under sections 23 and 24 of the statute (Wagn. Stat. 1169), for these sections have reference to assessing shares of stock, and there are no shareholders in the appellant's company. But the appellant owned the property and had it in its possession, and there is nothing to prevent its assessment under the general revenue law. The first section of the law declares that taxes shall be levied on all property, real and personal. (Wagn. Stat. 1159.) And it is made the duty of the assessor, in administering the oath to tax-payers, to swear them to give a true and correct list of all taxable property, including therein money and notes, or bonds in hand or on deposit, owned by them or under their charge. (Wagn. Stat. 1167, § 12.)

The vice-president of the company gave in the property as under his charge and owned by the company, and he could have

done nothing else. The property was certainly liable to taxation, and because it belonged to a corporation and did not come within the category of shares of stock, it was not entitled on that account to be exempted from assessment under the general provisions of the law. I am of the opinion that the assessors had full authority for their action, and that the judgment of the Circuit Court should be affirmed. The other judges concur.