**ARSENAL CREDIT UNION, et al.,**
**Plaintiffs-Appellants,**

v.

**Gwen GILES, et al.,**
**Defendants-Respondents.**

No. 67689.

Supreme Court of Missouri,
En Banc.

Sept. 16, 1986.

Leon G. Kusnetzky, Kansas City, for plaintiffs-appellants.

Edward J. Hanlon, James D. Wilson, St. Louis, for defendants-respondents.

RENDLEN, Judge.

This case involves the tax on tangible personal property of certain Missouri credit unions. The central issue is whether § 148.620.3, RSMo Cum.Supp.1984,[1] (here-

---

1. **148.620. Annual tax on net income, rate—credits allowed, exceptions.—**

1. Every taxpayer shall be subject to an annual tax for the privilege of exercising its corporate franchises within the state according to and measured by its net income for the preceding year.

2. The rate of tax for each taxable year shall be seven percent of such net income.

3. The tax imposed on the net income by this law shall be exclusive and in lieu of all other taxes against and upon credit unions and associations, their property, capital, or income except taxes on real estate and tangible personal property owned by the taxpayer and held for lease or

inafter § 148.620.3) which imposes a net income-based corporate franchise tax on credit unions and savings and loan associations *to the exclusion of other taxation,* violates Mo.Const. art. X, § 4(a)[2] and § 6 (1945 amended 1972 and 1982).[3]

Suit was brought by ten credit unions (hereinafter appellants) contesting personal property taxes collected by the City of St. Louis from the appellants aggregating $18,942.58 for the tax year 1983. Gwen Giles and Ronald Leggett were named defendants (hereinafter respondents) in their respective official capacities as tax assessor and collector of revenue for the City of St. Louis. They were responsible for assessing and collecting taxes on tangible personal property owned by appellants within the city boundaries.

Appellants' three-count petition sought judgment declaring the assessment and taxation of their personal property illegal and void, and for recovery of taxes paid under protest. They further prayed for a preliminary injunction restraining future assessment or collection of such personal property taxes. By answer and counter-claim respondents asked for judgment declaring § 148.620.3, purporting to relieve appellants from taxes on personal property owned or held by them for their own use, unconstitutional and invalid. Thereafter, respondents moved for summary judgment and the court, without findings of fact or conclusions of law, granted summary judgment declaring § 148.620.3 violative of §§ 4(a), 4(b) and 6.1 of Article X of the Missouri Constitution. The case falls within this Court's original appellate jurisdiction under the provisions of Mo. Const. art. V, § 3.

Appellants raise the following contentions: 1) Respondents neither as city officials nor as individuals are aggrieved or injured parties and accordingly lack standing to challenge the constitutionality of the questioned statute; 2) Section 148.620.3 substitutes a tax on net income for any tax

---

rental to others, contributions paid pursuant to the unemployment compensation law of Missouri, social security taxes, sales and use taxes.

4. Each taxpayer shall be entitled to credits against the tax imposed by this law for all taxes paid to the state of Missouri or any political subdivision thereof during the relevant income period, except taxes on real estate and tangible personal property owned by the taxpayer and held for lease or rental to others, contributions paid pursuant to the unemployment compensation law of Missouri, social security taxes, sales and use taxes, and taxes imposed by this law.

2. **Article X, Section 4(a). Classification of taxable property—taxes on franchises, incomes, excises and licenses.** All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property. The general assembly, by general law, may provide for further classification within classes 2 and 3, based solely on the nature and characteristics of the property, and not on the nature, residence or business of the owner, or the amount owned. Nothing in this section shall prevent the taxing of franchises, privileges or incomes, or the levying of excise or motor vehicle license taxes, or any other taxes of the same or different types.

3. **Article X, Section 6 (1982). Property exempt from taxation.**—1. All property, real and personal, of the state, counties and other political subdivisions, and nonprofit cemeteries, shall be exempt from taxation; all personal property held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners, and all personal property held as goods, wares, merchandise, stock in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments *shall be exempt* from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies *may be exempted from taxation by general law.* In addition to the above, household goods, furniture, wearing apparel and articles of personal use and adornment owned and used by a person in his home or dwelling place *may be exempt* from taxation by general law but any such law may provide for approximate restitution to the respective political subdivisions of revenues lost by reason of the exemption. *All laws exempting from taxation property other than the property enumerated in this article, shall be void.* The provisions of this section exempting certain personal property of manufacturers, refiners, distributors, wholesalers, and retail merchants and establishments from taxation shall become effective, unless otherwise provided by law, in each county on January 1 of the year in which that county completes its first general reassessment as defined by law. (Emphasis added.)

liability appellants would otherwise have under § 4(a) and does not create an exemption prohibited by § 6.1.

Addressing first the standing issue, we find appellants' challenge to respondents' right to pursue the constitutional issues raised in answer and counterclaim, not well taken. Appellants contend the questioned statute does not adversely affect respondents in the sense of an "injury in fact" and hence, respondents lack the requisite interest and are without standing to attack the statute's validity.

It has been aptly stated that for standing sufficient to attack the constitutionality of a statute a party must demonstrate he is "adversely affected by the statute in question...." *See Ryder v. County of St. Charles*, 552 S.W.2d 705, 707 (Mo. banc 1977). The rationale of the standing requirement is to assure that there is "a sufficient controversy between the parties [so] that the case will be adequately presented to the court." *Id.* 707. This Court on a fact situation substantially analogous to that at bar held a defendant (taxpayer) was "adversely affected" and had standing to challenge the constitutionality of a city license tax. *City of Cape Girardeau v. Fred A. Groves Motor Company*, 346 Mo. 762, 142 S.W.2d 1040, 1041, 1045 (1940).[4] The City of Cape Girardeau recovered approximately $1,100 by judgment in the trial court for a city license tax owed by the defendant Fred A. Groves Motor Company. Defendant asserted the city licensing ordinance violated Mo. Const. art. X, § 3 (1875), which required that taxes be uniform upon the same class of property.[5] Thus in a suit by the taxing authority for collection of taxes the taxpayer had sufficient interest and the requisite standing to raise the constitutional challenge under Article X, § 3. A real controversy existed between the taxpayer and the taxing authority assuring that the case would

be and in fact was adequately presented to the courts.

In short, the taxpayer who strove to avoid the tax by raising the validity issue in *Groves* had standing to make his constitutional attack. He would have been "adversely affected" if required to pay the tax and conversely the taxing authority would have been "adversely affected" if it could not collect the tax. Substantially the same factors occur in the case at bar. The city attempts to collect the personal property tax but the taxpayers (instead of refusing to pay the tax—as in *Groves*) paid under protest and brought suit for recovery of their taxes contending that § 148.620.3 provides an escape from the city's personal property taxing ordinance. Responding to this suit respondents under Article X, §§ 4(a) and 6.1, challenged the validity of § 148.620.3. The respondents are "adversely affected" by the exemption statute which if found valid and construed as requested by the taxpayer would deny the city its opportunity to collect the personal property taxes aggregating $18,942.58. Additionally, the issues have been vigorously litigated so it cannot be said the case has not been "adequately presented to the court."

■ This is not a request for an advisory opinion in a non-adversary proceeding by parties who wish advice on the law. *See Groves*, 142 S.W.2d at 1045. It is instead a hotly contested claim by taxpayers asserting a statutory exemption as a bar to the city's power to tax met head on by the city's counterclaim challenging the validity of such exemption. Under the *Groves* analysis either party has standing to present the validity issue. The stake is almost $19,000, who other than the taxpayer and the taxing authority would be better positioned to raise the question of the valid-

**4.** This case was overruled on the merits by *Kansas City v. John Deere Company*, 577 S.W.2d 633, 637 (Mo. banc 1979), but its findings on the issue of standing were not disturbed.

**5.** Mo. Const. art. X, § 3 (1875) provided:

Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws.

ity of a statute exempting the taxpayer from an ordinance of the taxing authority?

Arguments similar to those of appellants that local government units are "mere arms of the state" with no independent right to attack statutes that affect them—have been expressly rejected in favor of a standing doctrine concerned primarily with "sufficient controversy between the parties" regarding matters which "directly affect them." *Ryder,* 552 S.W.2d at 707. The fact that respondents are *local* taxing officials, is not an impediment to their assertion of invalidity because "taxes are levied by counties and they have such additional taxing powers as the legislature may grant [citation omitted] and, representing the state at large and in some measure themselves and other local units of government, counties have indeed a vital interest in all questions relating to the levy and assessment of taxes." *In re St. Joseph Lead Co. v. State Tax Commission,* 352 S.W.2d 656, 661 (Mo.1961).

This is a case calling for a substantive definition of respondents' rights under the challenged taxing scheme to protect and enforce the rights of the city. The construction and validity of the questioned statute impinges directly on the duties of tax officials sued by appellants and on the future legal relations of the parties. It presents a proper request for declaratory judgment by respondent tax officials, *State Tax Comm'n v. Admin. Hearing Comm'n,* 641 S.W.2d 69, 75 (Mo. banc 1982) and at issue are not only the monies allegedly collected without authority and currently held by respondents, *compare* City of *Jackson v. Heritage Savings and Loan Ass'n,* 639 S.W.2d 142, 145 (Mo.App.1982), but also future taxes if any to be assessed upon appellants' personal property. These matters were adequately alleged in respondents' counterclaim for declaratory judgment and are properly before this Court.

Now to the merits. The Missouri Constitution clearly expresses the people's intent that only a limited number of properties may be exempted from taxation. In Mo. Const. art. X, § 6 (1945) [6] certain properties were specifically exempted while others might thereafter be exempted by the general law. The specifically exempted properties were real and personal property of 1) the state 2) counties 3) other political subdivisions and 4) nonprofit cemeteries. The properties for which exemptions were permitted, if so provided by general law, were the real and personal property not held for private or corporate profit and used exclusively for a) religious worship b) schools and colleges c) purposes purely charitable or d) agricultural and horticultural societies. The section concluded with this ringing declaration "All laws exempting from taxation property other than the property enumerated in this article, *shall be void.*" (Emphasis added.) At the general election in 1972, Article X, § 6 [7] was amended so that the list of specifically exempt property set forth in the original provision of the 1945 Constitution as well as the list of

---

6. **Article X, Section 6 (1945). Exemptions from taxation.**—All property, real and personal, of the state, counties and other political subdivisions, and nonprofit cemeteries, *shall be exempt* from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies *may be exempted* from taxation by general law. *All laws exempting from taxation property other than the property enumerated in this article, shall be void.* (Emphasis added.)

7. **Article X, Section 6 (1972). Property exempt from taxation.** All property, real and personal, of the state, counties and other political subdivisions, and nonprofit cemeteries, *shall be exempt* from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies *may be exempted* from taxation by general law. In addition to the above, household goods, furniture, wearing apparel and articles of personal use and adornment owned and used by a person in his home or dwelling place *may be exempt* from taxation by general law but any such law may provide for approximate restitution to the respective political subdivisions of revenues lost by reason of the exemption. All laws exempting from taxation property other than the property enumerated in this Article, shall be void. (Emphasis added.)

items for which exemptions might be permitted under the general law remained intact but the amendment added the following items for which exemptions might be permitted a) household goods b) furniture and c) wearing apparel and articles of personal use and adornment owned and used by a person in his home or dwelling place. Again, the amended article closes with the prohibition found in the original article of 1945 that all laws exempting property other than those enumerated *shall be void.*

In 1982 § 6 was again submitted for amendment. *See supra*, note 3. The amendment, approved as § 6.1, retained the list of specifically exempted properties and those for which exemptions were permissible under the 1972 amended section but added to the list of specifically exempted items the following: all personal property a) held as industrial inventories, including raw materials, work in progress and finished work on hand, by manufacturers and refiners and b) held as goods, wares, merchandise, stock in trade or inventory for resale by distributors, wholesalers, or retail merchants or establishments. Again, the article amended in 1982 as § 6.1 retains the mandate that "[a]ll laws exempting from taxation property other than the property enumerated in this article, shall be void."

In addition to the specifically exempted property set forth in Article X, § 6.1 the constitution provides another instance in which a named class of property (i.e. bank shares) might be relieved of personal property tax. Article X, § 4(c)[8] indicates that another form of taxation may be substituted for the property tax on *bank shares* and this arrangement for substituting another tax in lieu of that on bank shares, effectively permits the legislature to exclude such intangible personal property from the personal property tax rolls of the counties or municipalities. Nothing in the briefs or argument of counsel suggest that such arrangement for the substitution of a tax on personal property is permitted by the Constitution other than for bank shares by Article X, § 4(c).[9] The purpose and meaning of the referenced provisions (§§ 6 and 6.1) are unmistakably clear when viewed against their history. Section 6.1 evolved from Mo. Const. art. XI, § 16 (1865) and was one of many major post-Civil War changes in the Missouri tax system.[10] The 1865 provision removed the discretion of the General Assembly to grant property tax exemptions, a practice that had apparently flourished and been abused under the Constitution of 1820. *See Life Ass'n of America v. Board of Assessors*, 49 Mo. 512, 521–22 (1872).[11] The meaning of the 1865 provision was explained as follows: "Former [revenue] laws [prior to 1865] specifically named the kinds of property to be taxed, while the act of 1865, following the constitution of 1865, declared, in effect, that *taxes should be levied on all property, real and personal." State v. St. Louis, K.C. & N. Ry.*, 77 Mo. 202, 213

**8. Article X, Section 4(c). Assessment, levy, collection and distribution of tax on intangibles.** All taxes on property in class 3 and its subclasses, and the tax under *any other form of taxation substituted by the general assembly for the tax on bank shares*, shall be assessed, levied and collected by the state and returned as provided by law, less two percent for collection, to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy. (Emphasis added.)

**9.** Constitutional exemptions not relevant here include the following: homestead Article X, § 6(a) (1972 amended 1982); forest lands and obsolete, decadent, or blighted areas Article X, § 7 (1945 amended 1976).

**10. Article XI, Section 16 (1865).** No property, real or personal, shall be exempt from taxation, except such as may be used exclusively for public schools, and such as may belong to the United States, to this State, to counties, or to municipal corporations within this State.

**11.** In construing the 1865 provision, the Court in *Life Ass'n of America v. Board of Assessors*, 49 Mo. 512, 517 (1872) struck down an act providing for life insurance companies to pay a designated fee in support of the insurance department, and in lieu of all other taxation. The act was held violative of the exemption provision of the Constitution of 1865. *Id.* at 522; *see also State ex rel. Missouri State Life Insurance Co. v. Gehner*, 320 Mo. 691, 696, 8 S.W.2d 1068, 1069–70 (1928) (discussing the holding of *Life Association*).

(1883) (emphasis added); *see generally* Missouri Taxation Law and Practice CLE, § 2.6. The Constitution of 1875, similarly prohibiting tax exemptions on property, was construed as applying to "affirmative exemptions, not to those which do not in terms exempt certain property, not to mere casual omissions." *Kansas City v. Mercantile Mut. Bldg. & Loan Ass'n,* 145 Mo. 50, 53, 46 S.W. 624, 624 (1898). Section 6 of the Constitution of 1945 and its subsequent amendments of 1972 and 1982 increased the number of exceptions to the exemption prohibition contained in Article XI, § 16 of the 1865 Constitution but neither the Constitution of 1945 nor its amendments allow the type of exemption created by § 148.620.3.

This Court has recognized three classes of taxes: "capitation or poll taxes, taxes on property, and excises." *General American Life Ins. Co. v. Bates,* 363 Mo. 143, 249 S.W.2d 458, 462 (1952). Excises include " 'every form of taxation which is not a burden laid directly upon persons or property; in other words, excises include every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation.' " *Id.* at 462 (quoting *State ex rel. Missouri Portland Cement Co. v. Smith,* 338 Mo. 409, 413, 90 S.W.2d 405, 407 (1936)).

The tax now under consideration is an excise by its terms (§ 148.620.1), "for the privilege of exercising ... corporate franchises within the state...." Under § 148.-620.2 the tax rate is seven percent of the taxpayers' net income for the preceding year and under the section here in question, § 148.620.3, this method of taxation is *"exclusive and in lieu of all other taxes"* (emphasis added) upon credit unions and savings and loan associations, including property taxes.

This Court in *Bates,* provided the analysis which is controlling in the case at bar. The constitutional validity of § 148.370, RSMo 1949 (hereinafter § 148.370), which contained the fatal language currently found in § 148.620.3 relating to credit unions, was at issue in *Bates. Id.* at 460–61. That statute provided that insurance companies pay a tax on the direct premiums they received

> ... at the rate of two per cent per annum, which amount of taxes shall be assessed and collected as provided in section 148.380, and shall be *in lieu of all taxes upon intangible personal property* owned by such insurance companies.... (Emphasis added.)

The constitutional attack in *Bates* was premised upon Mo. Const. art. X, § 6 (1945). *See supra,* note 6. *Bates,* 249 S.W.2d at 461. In order to measure the attack on § 148.370, the Court in *Bates* also rested its analysis upon Mo. Const. art. X, § 4(a). *Bates,* 249 S.W.2d at 461. All taxable property is required to be classified by Mo. Const. art. X, § 4(a) for tax purposes as either "class 1, real property; class 2, tangible personal property; [or] class 3, intangible personal property."

The plaintiffs in *Bates* sought to prevent the assessment of taxes on its intangible personal property by the State of Missouri. *Bates,* 249 S.W.2d at 459–60. They relied upon the "in lieu of" provision contained in § 148.370 and the gist of their argument was that § 148.370 was a reasonable "substitute" for the intangible personal property tax identified in Mo. Const. art. X, § 4(a). *Id.* at 461–62. The state asserted that § 148.370 clearly violated the exemption prohibition of Mo. Const. art. X, § 6 (1945). *Id.* at 461.

This Court recognized in *Bates* that the "substitute" tax of § 148.370 was an excise imposed upon the privilege of conducting business in Missouri, noting that property taxes were distinct from excise taxes. *Id.* at 464. These taxes are discrete and classified as such in Mo. Const. art. X, § 4(a). *Id.* Mo. Const. art. X, § 4(a) preliminarily identifies three classes of taxable property—real property, tangible personal property, and intangible personal property and the final sentence of Mo. Const. art. X, § 4(a) provides:

*Nothing* in [§ 4(a)] *shall prevent* the taxing of franchises, privileges or incomes, or the levying of *excise* or motor vehicle license taxes, or any other taxes of the same or different types. (Emphasis added.)

The nature of the constitutional infirmity of § 148.370 was that it exacted *"no"* tax upon intangible personal property while substituting an excise tax *merely authorized* by Mo. Const. art. X, § 4(a). *Bates,* 249 S.W.2d at 464. By precluding any tax on intangible personal property the effect of § 148.370 was to create an arrangement effectively exempting such property and because Mo. Const. art. X, § 6 (1945) did not authorize such exemption for intangible personal property this statutorily created exemption was necessarily unconstitutional.

In the case before us the legislature in § 148.620.3 has created a similar arrangement resulting in an exemption for the tangible personal property of credit unions. As previosuly discussed, Mo. Const. art. X, § 6 (1945) listed a few entities whose property was specifically exempt from taxation and a limited number of other entities which might be exempted from taxation by the general law. Section 6 (now § 6.1), determined by the Court in *Bates* as dispositive of the question presented there, is controlling in the case sub judice.

■ After *Bates,* Article X, § 6 was amended in 1972 and 1982 to enlarge the number of properties *specifically exempted* from taxation as well as those that might be exempted by general law. As discussed above, this Court held that the scheme provided by § 148.370 resulted in *"no"* tax upon the intangible personal property of insurance companies and that the "in lieu" provision contravened the exemption prohibition of Mo. Const. art. X, § 6 (1945). The legislature had engaged in an unauthorized attempt to reclassify and exempt property not authorized as exempt under § 6. Though the opinion of the Court in *Bates* published in 1952 invalidated § 148.370 no attempt to modify that holding appeared in the 1972 or 1982 amendments to Article X, § 6.[12] Nothing was done to expand the exceptions to the prohibition of § 6 to include the scheme embraced in § 148.620.3, and from this we conclude the arrangement created by § 148.620.3 is infirm for the reasons stated in *Bates.*

Appellants' argument for reversal is premised on this Court's decision in *William A. Straub, Inc. v. City of St. Louis,* 506 S.W.2d 377 (Mo.1974). The City of St. Louis in *Straub* attempted to tax the lessees of tangible personal property. The tangible personal property was owned by a bank. In *Straub* this Court interpreted whether the tax substitution given to Banks for their tangible personal property under § 148.110, RSMo 1969[13] could be transferred to lessees of that property. *Id.* at 379. *See generally, McKay Buick, Inc. v. Spradling,* 529 S.W.2d 394, 401 (Mo. banc 1975) which explains the meaning of *Straub.* The *Straub* Court did not address the constitutional question decided in *Bates*

---

12. A 1952 attorney general's opinion, relying on *General American Life Insurance Co. v. Bates,* 363 Mo. 143, 249 S.W.2d 458 (1952), declared an "in lieu" provision exempting credit institutions from paying tangible personal property taxes unconstitutional. 30 Op. Att'y Gen., H. Fox, Nov. 12, 1952. Although the provision remains in the statute respondents in oral argument stated that they have, as a result of the opinion, ignored the exemption and have traditionally taxed the personal property of credit institutions in their jurisdictions.

No such anomaly exists regarding the premium tax on insurance companies struck down in *Bates.* Section 148.370, RSMo 1949 (repealed L.1959, H.B. No. 94, § 1). The taxing scheme has since been changed so that the two percent tax on premiums is "in lieu of all other taxes *except taxes on real and tangible personal property,* taxes on incomes and on franchises and license taxes...." Section 148.320, RSMo Supp. 1984 (emphasis added).

13. **148.110. Tax in lieu of other taxes.**—It is the purpose and intent of the general assembly to *substitute the tax* provided by sections 148.010 to 148.110 for the tax on *bank shares* which was imposed by section 10959, RSMo 1939, and for all taxes on all *tangible and intangible personal property* of all banking institutions subject to the provisions of sections 148.010 to 148.110, and for all property taxes on the shares of such banking institutions. (Emphasis added.)

or any other issue of invalidity. *Spradling*, 529 S.W.2d at 401.[14] This Court addressed no constitutional issue in *Straub* for at least two readily apparent reasons; (1) no such issue was raised and (2) the type of arrangement provided by § 148.-110, RSMo 1969 was specifically permitted for bank shares by Mo. Const. art. X, § 4(c). *See supra*, note 8 and accompanying text.

In *Bates* this Court struck down an attempt by the legislature to replace an excise for a tax on intangible personal property of insurance companies and in this case the legislature has attempted to replace an excise for a tax on tangible personal property of credit unions also infirm for the reasons stated herein.

The judgment of the trial court is affirmed.

HIGGINS, C.J., and BILLINGS, BLACKMAR and ROBERTSON, JJ., concur.

DONNELLY and WELLIVER, JJ., dissent.

---

**14.** This Court's decision is premised upon the analytical framework established in *General American Life Insurance Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458 (1952). The crux of the constitutional infirmity in *Bates* as well as here is that both statutes have exacted *"no"* tax upon a class of property identified as taxable property in the constitution. *Id.* at 464. At the same time, there was never any specific constitutional grant of authority for either exclusion.

In *William A. Straub, Inc. v. City of St. Louis*, 506 S.W.2d 377, 379–80 (Mo.1974) this Court only sought to distinguish between a "substitution" and an "exemption" for purposes of determining whether a bank's payment of a "substitute" tax obligation was "transferrable" to the lessees of tangible personal property in order to extinguish the lessee's tax duty. The City of St. Louis in *Straub* argued that the "substitute" tax authorized by § 148.110, RSMo 1969 was in fact an "exemption" and that an "exemption" was not "transferrable." *Id.* at 379. *At no point in Straub* did this Court attempt to distinguish between a proper "substitution" and an impermissible "exemption" to resolve a constitutional challenge based upon Mo. Const. art. X, § 6 (1972).